UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DANIEL DELACRUZ,<br><br>        Plaintiff,<br><br>   v.<br><br>TANIMURA & ANTLE, INC., et al.,<br><br>        Defendants. | Case No. 23-cv-03034-VKD<br><br>**ORDER GRANTING DEFENDANT QUIRARTE'S MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 15 |

Plaintiff Daniel Delacruz, who is representing himself, filed this action against defendants Tanimura & Antle, Inc. ("TAI"), Mike Antle, Carmen Ponce, and Claudia Quirarte, asserting, among other things, that defendants unlawfully discriminated and retaliated against him based on a disability. Dkt. No. 1. Defendant Claudia Quirarte moves pursuant to Rules 8 and 12(b)(6) to dismiss Mr. Delacruz's complaint.[1] Dkt. No. 15. Mr. Delacruz opposes the motion. Dkt. No. 19. The Court deemed the matter suitable for determination without oral argument. Dkt. No. 26; Civil L.R. 7-1(b). Upon consideration of the moving and responding papers, the Court grants Ms. Quirarte's motion with limited leave to amend as discussed below.[2]

## I.  BACKGROUND

According to his complaint, Mr. Delacruz has been diagnosed with Fabry Disease, a rare hereditary enzyme deficiency disorder, for which he receives enzyme replacement therapy

---

[1] The Court addresses the motion to dismiss filed by TAI, Mr. Antle, and Ms. Ponce in a separate order.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9, 14.

("ERT") "on a regular basis to prevent chronic organ failure and death." Dkt. No. 1 ¶¶ 19, 22. Defendant Claudia Quirarte is identified as a registered nurse, who works at the medical facility where Mr. Delacruz received ERT. *Id*. ¶ 52. Defendant TAI is a produce company that employed Mr. Delacruz from about April 1988 to July 1996. *See id*. ¶ 21; *see also id*. Ex. 8 at ECF 58. Defendant Mike Antle is identified as an "owner, employee, and a Vice President" of TAI. Dkt. No. 1 ¶ 8. Defendant Carmen Ponce is alleged to be TAI's "Vice President of Human Resources and Assistant General Counsel[.]" *Id*. ¶ 9.

Mr. Delacruz alleges that on one occasion, apparently some time before 1999 when Mr. Delacruz was still employed by TAI, Rick Antle (identified as TAI's president, now deceased) was in a break room eating one of TAI's salad products with heavy dressing. *Id*. ¶ 21; *see also id*. ¶ 22. When Mr. Delacruz commented, "[B]e careful, that stuff can give you a heart attack," Rick Antle reportedly replied, "[Y]ou're the one that needs to worry about that stuff!" Dkt. No. 1 ¶ 21. According to Mr. Delacruz, Rick Antle's response was a gloating reference to Mr. Delacruz's enzyme deficiency disorder and an indication that Rick Antle believed that he would outlive Mr. Delacruz. *Id*.

The complaint alleges that years later, in 2018, Rick Antle passed away. *Id*. ¶ 23. In 2019, during one of Mr. Delacruz's ERT procedures, Mr. Delacruz "recited Rick Antle's malevolent gloat made towards [Mr. Delacruz] and the irony of Rick Antle's death[.]" *Id*. Ms. Quirarte allegedly overheard Mr. Delacruz's comment and repeated it to defendants Mike Antle and Ms. Ponce. *Id*. Mr. Delacruz alleges that this caused Mr. Antle and Ms. Ponce to seek "new means to harass and interfere with [his] health services" and "to fulfill the death threats" that Mr. Delacruz says he has received. *Id*.

For example, Mr. Delacruz alleges that, among other falsehoods, Mr. Antle and Ms. Ponce continue to disseminate to Ms. Quirarte and other people, "their fraudulent claim that [Mr. Delacruz] is not disabled[.]" *Id*. ¶¶ 49, 50; *see also id*. ¶ 57. As a result, during medical appointments, Ms. Quirarte allegedly would "contemptuously star[e]" at Mr. Delacruz and make "snide[] remark[s]," such as observing that Mr. Delacruz did "not look disabled" or exclaiming "Look, he's going to start complaining!" *Id*. ¶¶ 53, 57. Mr. Delacruz says that "[w]henever

2

possible, [he] would change his schedule for his medical procedures so that a different nurse would prepare his medication in an attempt to avoid Defendant Quirarte." *Id*. ¶ 53. Ms. Quirarte, however, allegedly "would also adjust her work schedule to remain as [Mr. Delacruz]'s nurse." *Id*.

Mr. Delacruz further alleges that during one of his medical procedures, in which Ms. Quirarte removed an intravenous ("IV") needle from his arm, she "deliberately maneuvered the needle out in an exaggerated arching path so that it dripped a stream of blood onto the medical pillow" supporting Mr. Delacruz's arm. *Id*. ¶ 54. Ms. Quirarte reportedly never did this before. *Id*. Rather than comply with protocols requiring that the pillow promptly be disposed "in a medical trash bin that is located in the patient's treatment are in plain view of [Mr. Delacruz]," Ms. Quirarte allegedly "took the disposable pillow case stained with [Mr. Delacruz]'s blood back to her work area located in a small room opposite to where [Mr. Delacruz] was seated and placed it on a shelf." *Id*. ¶ 55. According to the complaint, Ms. Quirarte previously "never deviated from the proper disposal protocol of used and blood stained disposable medical pillows." *Id*. The complaint further alleges that Ms. Quirarte "violat[ed] [Mr. Delacruz]'s privacy rights" by giving the blood-stained pillowcase "to Defendants Antle and Ponce to use for their nefarious purposes. For example, Defendants Antle and Ponce obtained [Mr. Delacruz]'s blood for analysis to further harass [Mr. Delacruz] by fraudulently disputing his disability as they have for over twenty years." *Id*. ¶ 56.

Mr. Delacruz further alleges that in addition to making snide remarks that he does not look disabled, Ms. Quirarte reportedly also began to omit ERT medication from his IV bags, "caus[ing] [his] various organ functions to deteriorate over time including his central nervous system resulting in tremors to his hands and loss of dexterity." *Id*. ¶ 57. Additionally, Mr. Delacruz says that on or around June 26, 2019, Ms. Quirarte prepared his intravenous bag "that appeared abnormal and foamy." *Id*. ¶ 58. But when Mr. Delacruz inquired about it, she "responded with an excuse that 'it just needs to settle.'" *Id*. ¶¶ 58, 59. Suspicious, Mr. Delacruz says that he photographed the IV bag and showed it to one of his doctors and to a representative of the company that developed the ERT medication, both of whom "affirmed that the IV bag that was

prepared by [Ms.] Quirarte appeared abnormal." *Id*. ¶¶ 59, 60.

Mr. Delacruz says that he became more suspicious of Ms. Quirarte and began to seat himself closer to her work area so he could observe her while she prepared his medication. *Id*. ¶ 61. However, Mr. Delacruz says that his view was partially blocked by Ms. Quirarte's back, and she "took notice of [his] new seating arrangement and would constantly look over her shoulder and use her peripheral vision to see if [he] was observing her prepare [his]" medication. *Id*.

Due to Ms. Quirarte's "suspicious behavior and snide remarks," Mr. Delacruz says that he "insisted on changing nurses for his ERT medical procedures" and later "changed his medical services provider as an added precaution." *Id*. ¶ 62. However, Ms. Quirarte reportedly accessed Mr. Delacruz's medical file to obtain the name of his new medical services provider and then "telephoned [Mr. Delacruz] to inform him that she was seeking employment with the same medical services provider and wanted to continue as [his] nurse." *Id*. ¶ 63. Mr. Delacruz says he was alarmed and changed his medical services provider yet again "so that [Ms.] Quirarte would not be able to continue as his nurse and to prevent [her] from accessing his medical file from his new medical services provider." *Id*.

Mr. Delacruz's complaint asserts six claims for relief against all defendants, four of which are based on federal law: disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. and various implementing regulations (claim 1); civil rights violations, 42 U.S.C. § 1983 (claim 2); breach of contract, 42 U.S.C. § 1981 (claim 3); and request for "Order to Show Cause re Specific Performance and Injunctive Relief," 42 U.S.C. § 1981 (claim 4). The remaining two claims for relief are based on California state law: disability discrimination under the California Unruh Civil Rights Act (Cal. Civ. Code § 51, *et seq*.) and the Disabled Persons Act (Cal. Govt. Code § 12948) (claim 5); and violation of Article I, § 1 of the California Constitution (claim 6).

Ms. Quirarte moves to dismiss all of Mr. Delacruz's claims, arguing that his complaint fails to allege sufficient facts to support any plausible claim for relief, including any claim for punitive damages.

## II. DISCUSSION

### A. Rule 8

Ms. Quirarte argues that the complaint should be dismissed for failure to comply with the general rules for pleading set out in Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8 requires a complaint to include a short and plain statement indicating the grounds for jurisdiction, a short and plain statement of the claim, and a demand for the relief sought. Fed. R. Civ. P. 8(a)(1)-(3). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Accordingly, even claims that are not on their face subject to dismissal under Rule 12(b)(6) may still be dismissed for violating Rule 8(a). *Id*. Although "verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)," *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), where the allegations in a complaint are "argumentative, prolix, replete with redundancy and largely irrelevant," the complaint is properly dismissed for failure to comply with Rule 8(a), *McHenry*, 84 F.3d at 1178-79.

On the whole, Mr. Delacruz's complaint fails to comply with Rule 8's mandate to provide a short and plain statement of each claim showing that he is entitled to relief. The complaint refers to various alleged legal wrongs that the defendants have committed, and refers to multiple legal proceedings and events, which appear to span about three decades. With respect to Ms. Quirarte, however, the complaint is more discrete and makes reasonably clear connections between the allegations, Ms. Quirarte, and the claims for relief. *See* Dkt. No. 1 ¶ 23; *see also id*. ¶¶ 49-63. Indeed, Mr. Delacruz confirms that his claims against Ms. Quirarte essentially concern her alleged interference with his medical services in 2019 and 2021.[3] *See* Dkt. No. 19 at 1-2.

Accordingly, Ms. Quirarte's motion to dismiss Mr. Delacruz's complaint, for alleged Rule 8 violations, is denied. Nonetheless, for the reasons discussed below, the Court agrees that Mr. Delacruz's complaint fails to state sufficient facts to establish plausible claims for relief.

---

[3] Mr. Delacruz argues that his claims are timely. *See* Dkt. No. 19 at 3. Ms. Quirarte, however, has not moved to dismiss his claims against her on the basis of any statute of limitations. The Court therefore expresses no view as to the timeliness of Mr. Delacruz's claims against Ms. Quirarte.

### B. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint (or portion thereof) should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999. Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

### 1. Disability Discrimination and Retaliation under the ADA

The ADA is comprised of four titles and prohibits disability discrimination in employment (Title I, 42 U.S.C. §§ 12111-12117); in public services and programs by public entities (Title II, 42 U.S.C. §§ 12131-12165); and in public accommodations and services by private entities (Title III, 42 U.S.C. §§ 12181-12189). Title IV (42 U.S.C. §§ 12201-12213) contains miscellaneous provisions, including an anti-retaliation provision. *See* 42 U.S.C. § 12203. While Mr. Delacruz's complaint references that anti-retaliation provision, he does not otherwise identify which provisions or titles of the ADA Ms. Quirarte violated. With respect to his allegations against Ms. Quirarte, there is nothing in the complaint that suggests that Mr. Delacruz's claim arises under Title I. While the complaint does not specify the nature of the medical facility where Ms. Quirarte worked and where Mr. Delacruz received ERT, the parties' arguments focus on Title II of the ADA, indicating that Mr. Delacruz's claim concerns alleged discrimination in "the services, programs, or activities of a public entity[.]" 42 U.S.C. § 12132.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. To state a claim for violation of Title II of the ADA, a plaintiff must plead facts showing that (1) he is a "qualified individual with a disability"; (2) he was excluded from participation in or denied the benefits of a public entity's services, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997). As noted above, Mr. Delacruz's retaliation claim is based on 42 U.S.C. § 12203, which provides in relevant part, that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Mr. Delacruz contends that Ms. Quirarte discriminated against him by omitting ERT medication from his IV bags and harassing him "with contemptuous snide remarks including '[Y]ou don't look disabled.'" *See* Dkt. No. 19 at 5; *see also* Dkt. No. 1 ¶¶ 52, 57, 70. Referencing certain filings and rulings in a prior bankruptcy case he filed in this district, Mr. Delacruz also contends that Ms. Quirarte's conduct was retaliation for "his successful pleadings related to his disability." Dkt. No. 19 at 6; *see also* Dkt. No. 1 ¶¶ 43, 69 & Exs. 4, 5. Even assuming, without deciding, that Mr. Delacruz is a "qualified individual with a disability" by virtue of his enzyme deficiency disorder, the complaint does not contain any allegation suggesting that Mr. Delacruz suffered discrimination by a public entity. Mr. Delacruz does not sufficiently allege that Ms. Quirarte's alleged harassment and omission of his medication was by reason of his disability. As pled in his complaint, Ms. Quirarte's alleged conduct was motivated by her supposed belief that Mr. Delacruz is not disabled and by ill will stemming from Mr. Delacruz's comment about Rick Antle's death. *See* Dkt. No. 1 ¶¶ 23, 49, 50, 57. There is no indication that Ms. Quirarte had any involvement, stake, or interest in Mr. Delacruz's prior bankruptcy case. While Mr. Delacruz alleges that Ms. Quirarte was an agent of the other defendants (*see* Dkt. No. 1 ¶ 7), those allegations are entirely conclusory.

Accordingly, Mr. Delacruz's claim for disability discrimination and retaliation as to Ms. Quirarte is dismissed. The Court will, however, give Mr. Delacruz leave to amend this claim, as it is not possible to conclude from the parties' briefing whether amendment would be futile.

**2.     42 U.S.C. § 1983**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). A claim for civil rights violations under § 1983 requires two essential elements: (1) that a right secured by the Constitution or laws

of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Ms. Quirarte argues that Mr. Delacruz's § 1983 claim fails because there are no allegations that her conduct amounts to state action, and that, in any event, the complaint states no facts establishing the violation of any right secured by the U.S. Constitution or federal law. *See* Dkt. No. 15 at 10-11.

As noted above, the complaint does not clearly identify whether Ms. Quirarte worked for a public entity or for a private facility. Nor has any party adequately addressed how that might impact the Court's analysis here. But for the reasons discussed below, and putting aside whether Ms. Quirarte could be a proper defendant to a claim under Title II of the ADA, the Court agrees that the complaint fails to allege sufficient facts establishing that she acted under color of state law.

In some circumstances, a private party may be considered a state actor for purposes of a § 1983 claim. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) ("The Supreme Court has articulated four tests for determining whether a private party's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.") (internal citation omitted, alteration adopted). Mr. Delacruz argues that, for pleading purposes, his allegations satisfy the joint action test. *See* Dkt. No. 19 at 7. As explained below, he does not allege cognizable government action under that test.

"[J]oint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Tsao*, 698 F.3d at 1140 (internal quotation marks omitted). "Joint action therefore requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). Here, Mr. Delacruz contends that defendants TAI, Mr. Antle, and Ms. Ponce are agents of the State Bar of California. *See* Dkt. No. 19 at 7. He further contends that Ms. Quirarte "acted under color of state law because she willfully participated with her co-Defendants as agents of the State Bar entity to harass [Mr. Delacruz] with numerous falsehoods that were virtually identical false statements as those made by her co-Defendants." *Id*. For example, Mr. Delacruz argues that Ms. Quirarte's alleged remark, "Look, he's going to start

complaining," made "while contemptuously staring at [Mr. Delacruz]," is "virtually identical" to a statement Ms. Ponce reportedly made around 2012 in a separate proceeding involving the California State Bar. *See id.*; *see also* Dkt. No. 1 ¶ 53 & Ex. 6. Similarly, Mr. Delacruz argues that Ms. Quirarte's "snide remark" that "[Y]ou don't look disabled" is "virtually identical to the falsehood," reportedly made by Mr. Antle and Ms. Ponce in 2001 in Mr. Delacruz's bankruptcy action, that Mr. Delacruz is not disabled. *See* Dkt. No. 19 at 7; *see also* Dkt. No. 1, Ex. 1. As discussed above, Mr. Delacruz's allegations that Ms. Quirarte is an agent of her co-defendants are entirely conclusory. Mr. Delacruz's arguments that defendants made reportedly similar remarks—decades apart and in varying circumstances—are not sufficient to support a plausible claim of state action by Ms. Quirarte. *See* Dkt. No. 1 ¶ 7; *see also Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (conclusory allegations are insufficient to show that a private party is a state actor for purposes of pleading a § 1983 claim); *Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991) (same). In any event, there are no facts alleged that plausibly suggest that Ms. Quirarte's alleged harassment and other conduct has any relation to, or connection with, the California State Bar. The complaint's conclusory and vague allegations are not sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. There is no indication that Mr. Delacruz's claim could be cured by the allegation of additional facts on amendment. Accordingly, Mr. Delacruz's § 1983 claim against Ms. Quirarte is dismissed without leave to amend.

### 3. 42 U.S.C. § 1981

Mr. Delacruz's third and fourth claims for relief are based on 42 U.S.C. § 1981, which provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "Although § 1981 does not itself use the word 'race,'" the Supreme Court "has construed the section to forbid all 'racial' discrimination in the making of private as well as

public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *see also Runyon v. McCrary*, 427 U.S. 160, 168 (1976) ("It is now well established that . . . 42 U.S.C. § 1981, prohibits racial discrimination in the making and enforcement of private contracts."); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (noting that under *Runyon*, "§ 1981 applies only to race-based discrimination.").

Mr. Delacruz states that he is Latino. *See* Dkt. No. 19 at 7. But his complaint states no facts even suggesting that any of Ms. Quirarte's alleged actions were taken because of his race. Mr. Delacruz's complaint therefore does not give rise to a plausible claim for relief. It is not apparent from the record presented that his pleading could be cured by the allegations of additional facts on amendment. Accordingly, Mr. Delacruz's third and fourth claims for relief under 42 U.S.C. § 1981 are dismissed as to Ms. Quirarte, without leave to amend.

### C. State Law Claims

Where a federal court has original jurisdiction over a claim pursuant to federal law, it also has supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As discussed above, Mr. Delacruz has leave to amend only with respect to the identified deficiencies in his federal ADA claim. The Court declines to exercise supplemental jurisdiction over Mr. Delacruz's remaining state law claims unless and until a viable federal ADA claim is adequately pled. Mr. Delacruz's state law claims therefore are dismissed without prejudice.

### III. CONCLUSION

Based on the foregoing, Ms. Quirarte's motion to dismiss the complaint pursuant to Rule 8 and Rule 12(b)(6) is granted, with leave to amend only as to the identified deficiencies in Mr. Delacruz's claim against Ms. Quirarte under the ADA, consistent with the rulings above. Mr. Delacruz is reminded of his obligations under Rule 11 and must take care that any amended complaint he chooses to file must be warranted by existing law (or by a nonfrivolous argument for extending or modifying that law) and that any factual allegations must be made in a good faith belief as to the evidentiary support for them.

If Mr. Delacruz chooses to amend his complaint, his amended pleading should be titled "First Amended Complaint." He must file his First Amended Complaint no later than **November 3, 2023**. Mr. Delacruz is advised that the failure to comply with court-ordered deadlines may result in the dismissal of this case for his lack of attention to it and failure to prosecute this matter. Fed. R. Civ. P. 41.

**IT IS SO ORDERED.**

Dated: October 20, 2023

Virginia K. DeMarchi
United States Magistrate Judge