1

2

3

4                UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6                     SAN JOSE DIVISION

7

8    DANIEL DELACRUZ,                        Case No.  23-cv-03034-VKD

                    Plaintiff,
9
                                             **ORDER GRANTING DEFENDANT**
10        v.                                 **QUIRARTE'S MOTION TO DISMISS**
                                             **FIRST AMENDED COMPLAINT**
11   TANIMURA & ANTLE, INC., et al.,
                                             Re: Dkt. No. 38
                    Defendants.
12

13

14        Plaintiff Daniel Delacruz, who is representing himself, filed this action against defendants

15   Tanimura & Antle, Inc. ("TAI"), Mike Antle, and Carmen Ponce (collectively, "TAI defendants")

16   and Claudia Quirarte, asserting, among other things, unlawful disability discrimination under the

17   Americans with Disabilities Act ("ADA").  Dkt. No. 1.  On prior motions filed by Ms. Quirarte

18   and the TAI defendants, the Court dismissed Mr. Delacruz's complaint, with leave to amend only

19   as to the ADA claim against Ms. Quirarte.  *See* Dkt. Nos. 28, 29.

20        Mr. Delacruz filed a first amended complaint ("FAC").  Dkt. No. 34.  Ms. Quirarte now

21   moves pursuant to Rule 12(b)(6)[1] to dismiss the FAC.[2]  Mr. Delacruz opposes the motion.  The

22   Court deemed the motion suitable for determination without oral argument.  *See* Civil L.R. 7-1(b);

23

24   [1] Although Ms. Quirarte also refers to Rule 12(b)(1) as a basis for her present motion to dismiss,
     certain claims asserted against her arise under federal law.  Ms. Quirarte's arguments for dismissal
25   appear to be more properly characterized as ones under Rule 12(b)(6) and will be addressed as
     such.  Additionally, Ms. Quirarte's present motion was filed four days late, due to what she says
26   was "a calendaring issue." Dkt. No. 45 at 1.  Although Mr. Delacruz correctly notes that the
     motion is untimely, there is no indication that he has been prejudiced by the delay in Ms.
27   Quirarte's filing.

28   [2] The Court will issue a separate order addressing the TAI defendants' motion to dismiss the FAC.

United States District Court
Northern District of California

1    Dkt. No. 47.  Upon consideration of the moving and responding papers, the Court grants Ms.

2    Quirarte's motion to dismiss the FAC with limited leave to amend.[3]

3    **I.    BACKGROUND**

4          According to the FAC, Mr. Delacruz has been diagnosed with Fabry Disease, a rare

5    hereditary enzyme deficiency disorder, for which he receives enzyme replacement therapy

6    ("ERT") "on a regular basis to prevent chronic organ failure and death."  Dkt. No. 34 ¶¶ 13, 15.

7    Ms. Quirarte is identified as a registered nurse, who works at Central Coast Nephrology, the

8    medical facility where Mr. Delacruz received ERT.  *Id*. ¶¶ 6, 28.  Defendant TAI is a produce

9    company that employed Mr. Delacruz from about April 1988 to July 1996.  *See id.* ¶¶ 7, 13 & Ex.

10   1 at ECF 19.  Defendant Mike Antle is identified as an "owner, employee, and a Vice President"

11   of TAI.  *Id*. ¶ 8.  Defendant Carmen Ponce is alleged to be TAI's "Vice President of Human

12   Resources and Assistant General Counsel[.]"  *Id*. ¶ 9.

13         In 1998, Mr. Delacruz sued TAI and Mr. Antle in state court for race discrimination.  *Id*.

14   ¶ 14.  The parties resolved the matter and entered into a settlement agreement.  *Id*. & Ex. 1.

15   According to Mr. Delacruz, as part of that settlement, the TAI defendants agreed not to harass

16   him.  *Id*.  Mr. Delacruz claims that the TAI defendants have breached that agreement by, among

17   other things, "disseminat[ing] to various people, including Claudia Quirarte, falsehoods including

18   that [he] 'filed a lot of complaints that went nowhere' and that [he] is 'not disabled.'"  *Id*. ¶ 22; *see

19   also id*. ¶ 27.

20         Mr. Delacruz alleges that his "hereditary disorder was well known to [Mr.] Antle and [Ms.]

21   Ponce."  *Id*. ¶ 18.  For example, he says that on one occasion, apparently at a time when he was

22   still employed by TAI, Rick Antle (identified as TAI's president, now deceased) was in a break

23   room eating one of TAI's salad products with heavy dressing.  *See id*.; *see also* Dkt. No. 1 ¶¶ 21,

24   22.  When Mr. Delacruz commented, "[B]e careful, that stuff can give you a heart attack," Rick

25   Antle reportedly replied, "[Y]ou're the one that needs to worry about that stuff!"  Dkt. No. 34

26   ¶¶ 18, 19.  According to Mr. Delacruz, Rick Antle's response was a gloating reference to his

27

28   ───────────────
     [3] All parties have expressly consented that all proceedings in this matter may be heard and finally
     adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9, 14.

United States District Court
Northern District of California

1   enzyme deficiency disorder and an indication that Rick Antle believed that he would outlive Mr.

2   Delacruz. *Id*.

3       The FAC alleges that years later, in 2018, Rick Antle passed away. *Id*. ¶ 19.  In 2019,

4   during one of Mr. Delacruz's ERT procedures, Mr. Delacruz "recited Rick Antle's malevolent

5   gloat made towards [Mr. Delacruz] and the irony of Rick Antle's death[.]" *Id*. ¶ 20.  Ms. Quirarte

6   allegedly overheard Mr. Delacruz's comment and repeated it to defendants Mike Antle and Ms.

7   Ponce.  *Id*.  Mr. Delacruz alleges that this "further enraged the visceral contempt that [Mr.] Antle

8   and [Ms.] Ponce have towards [him]" and caused them "to interfere with [Mr. Delacruz]'s health

9   services to fulfill the death threats that [he] had been receiving from TAI's employees[.]" *Id*. ¶ 21.

10       Mr. Delacruz alleges that, in addition to telling Ms. Quirarte falsehoods about him, Mr.

11   Antle and Ms. Ponce "solicited [Ms.] Quirarte to obtain a sample of [Mr. Delacruz]'s blood for

12   nefarious purposes," e.g., "for analysis to dispute [Mr. Delacruz]'s disability based on their

13   documented history of fraudulently disputing his disability." *Id*. ¶ 22.  Mr. Antle and Ms. Ponce

14   allegedly "also solicited [Ms.] Quirarte to interfere with [Mr. Delacruz]'s ERT procedures by

15   deceitfully leaving out the medication from [his] [intravenous] IV bags," "caus[ing] [Mr.

16   Delacruz]'s various organ functions to deteriorate over time including his central nervous system

17   resulting in tremors to his hands and loss of dexterity." *Id*. ¶ 23.

18       The FAC alleges that "[i]n the alternative," Mr. Antle's and Ms. Ponce's "reckless

19   dissemination of falsehoods . . . motivated [Ms.] Quirarte to interfere sua sponte with [Mr.

20   Delacruz]'s ERT medication" and "to obtain a sample of [Mr. Delacruz]'s blood and deliver it to

21   [Mr.] Antle and [Ms.] Ponce sua sponte to dispute [Mr. Delacruz]'s disability." *Id*. ¶ 24.  Mr.

22   Delacruz says that during one of his medical procedures, in which Ms. Quirarte removed an IV

23   needle from his arm, she "deliberately released the pressure from [his] vein over the injection site

24   and maneuvered the needle out in an exaggerated arching path causing the needle to drip a stream

25   of blood onto the medical pillow" that was supporting his arm. *Id*. ¶ 30.  Ms. Quirarte reportedly

26   never did this before.  *Id*.  Rather than comply with protocols requiring that the pillow promptly be

27   disposed "in a medical trash bin that is located in the patient's treatment area in plain view of [Mr.

28   Delacruz]," Ms. Quirarte reportedly "took the disposable pillow case stained with [Mr.

United States District Court
Northern District of California

3

1   Delacruz]'s blood back to her work area located in a small room about twenty feet opposite to

2   where [Mr. Delacruz] was seated and placed it on a shelf." *Id*. ¶ 31.  According to the complaint,

3   Ms. Quirarte previously "never deviated from the proper disposal protocol of used disposable

4   medical pillow cases."  *Id*.  The FAC further alleges that Ms. Quirarte violated Mr. Delacruz's

5   privacy rights by giving the blood-stained pillowcase "to [Mr.] Antle and [Ms.] Ponce to use for

6   their nefarious purposes."  *Id*. ¶ 32.

7          Additionally, the FAC alleges that during an April 2021 ERT procedure, Ms. Quirarte

8   "contemptuously star[ed]" at Mr. Delacruz and "snidely remarked . . . 'Look, he's going to start

9   complaining!'"  *Id*. ¶ 29. Mr. Delacruz says that "[w]henever possible, [he] would change his

10  schedule for his ERT procedures so that a different nurse would prepare his medication in an

11  attempt to avoid [Ms.] Quirarte."  *Id*.  Ms. Quirarte, however, allegedly "would also adjust her

12  work schedule to remain as [Mr. Delacruz]'s nurse."  *Id*.

13         The FAC further alleges that after Mr. Antle and Ms. Ponce "disseminated to [Ms.]

14  Quirarte their fraudulent dispute" regarding his disability, and Ms. Quirarte made a "snide

15  comment to [Mr. Delacruz] that he did not look disabled," Ms. Quirarte "deceitfully left out the

16  ERT medication from [his] IV bags," "caus[ing] [his] various organ functions to deteriorate over

17  time including his central nervous system resulting in tremors to his hands and loss of dexterity."

18  *Id*. ¶¶ 33, 34.  Additionally, Mr. Delacruz alleges that around June 26, 2019, Ms. Quirarte

19  prepared his IV bag "that appeared abnormal and foamy, which had never occurred in the more

20  than twenty years of [Mr. Delacruz]'s ERT treatments via IV bags."  *Id*. ¶ 34.  But when Mr.

21  Delacruz inquired about it, Ms. Quirarte reportedly "responded with an excuse that 'it just needs to

22  settle.'"  *Id*. ¶ 35.  Suspicious, Mr. Delacruz says that he photographed the IV bag and showed it to

23  a nephrologist at the facility who is familiar with ERT medication, as well as to a representative of

24  the company that developed the ERT medication, both of whom affirmed that the IV bag that was

25  prepared by Ms. Quirarte appeared abnormal."  *Id*. ¶ 36.

26         Mr. Delacruz says that he became more suspicious of Ms. Quirarte and began to seat

27  himself closer to her work area so he could observe her while she prepared his medication.  *Id*.

28  ¶ 37.  However, Mr. Delacruz says that his view was partially blocked by Ms. Quirarte's back, and

United States District Court
Northern District of California

4

1  she "took notice of [his] new seating arrangement and would constantly look over her shoulder

2  and use her peripheral vision to see if [he] was observing her prepare [his] ERT medication." *Id*.

3      Mr. Delacruz says that he told his nephrologist about Ms. Quirarte's "suspicious behavior,"

4  "insisted on changing nurses for his ERT medical procedures," and later "changed his medical

5  services provider as an added precaution." *Id*. ¶ 38.  However, Ms. Quirarte reportedly accessed

6  Mr. Delacruz's medical file to obtain the name of his new medical services provider and then

7  "telephoned [Mr. Delacruz] to inform him that she was seeking employment with the same

8  medical services provider and wanted to continue as [his] nurse." *Id*. ¶ 39.  Mr. Delacruz says he

9  was alarmed and changed his medical services provider yet again "so that [Ms.] Quirarte would

10  not be able to continue as his nurse and to prevent [her] from accessing his medical file from his

11  new medical services provider." *Id*.

12      In his original complaint, Mr. Delacruz asserted six claims for relief against all defendants,

13  four of which were based on federal law:  disability discrimination and retaliation under the ADA,

14  42 U.S.C. § 12101, *et seq*. and various implementing regulations (claim 1); civil rights violations,

15  42 U.S.C. § 1983 (claim 2); breach of contract, 42 U.S.C. § 1981 (claim 3); and request for "Order

16  to Show Cause re Specific Performance and Injunctive Relief," 42 U.S.C. § 1981 (claim 4).  *See*

17  Dkt. No. 1.  The remaining two claims for relief were based on California state law: disability

18  discrimination under the California Unruh Civil Rights Act (Cal. Civ. Code § 51, et seq.) and the

19  Disabled Persons Act (Cal. Govt. Code § 12948) (claim 5); and violation of Article I, § 1 of the

20  California Constitution (claim 6).

21      The Court granted Ms. Quirarte's Rule 12(b)(6) motion to dismiss Mr. Delacruz's

22  complaint.  All of Mr. Delacruz's federal claims for relief were dismissed, and he was given leave

23  to amend only his ADA claim.  *See* Dkt. No. 29.  The Court declined to exercise supplemental

24  jurisdiction over Mr. Delacruz's state law claims "unless and until a viable federal ADA claim is

25  adequately pled." *Id*. at 11.  Those state law claims were dismissed without prejudice.

26      Mr. Delacruz filed his FAC, asserting claims against Ms. Quirarte for disability

27  discrimination under ADA Title II (claim 1), disability discrimination under Section 504 of the

28  Rehabilitation Act of 1973 (claim 2), and violation of his privacy rights under Article I, § 1 of the

California Constitution (claim 3).

Ms. Quirarte moves to dismiss all of Mr. Delacruz's claims, arguing that he was not given leave to assert a claim under the Rehabilitation Act and that the FAC fails, in any event, to state sufficient facts to support any plausible claim for relief.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Moreover, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).  Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint (or portion thereof) should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule

United States District Court
Northern District of California

12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999. Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

## III. DISCUSSION

### A. Disability Discrimination under Title II of the ADA

Title II of the ADA prohibits disability discrimination in public services and programs by public entities, and provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim for violation of Title II, a plaintiff must plead facts showing that (1) he is a "qualified individual with a disability"; (2) he was excluded from participation in or denied the benefits of a public entity's services, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997).

Mr. Delacruz claims that he "was denied the benefits of the ERT infusion services solely by reason of his Fabry Disease because [Ms.] Quirarte harassed him" and omitted the ERT medication from his IV bags. Dkt. No. 34 ¶¶ 47, 48. Ms. Quirarte argues that this claim must be dismissed because the FAC fails to allege sufficient facts demonstrating that Mr. Delacruz experienced discrimination by a public entity. She also contends that the FAC fails to allege facts demonstrating that her alleged conduct was by reason of Mr. Delacruz's claimed disability. *See* Dkt. No. 38 at 6. As Ms. Quirarte's first argument is dispositive, the Court grants her motion to dismiss Mr. Delacruz's ADA claim on that basis, without leave to amend.

Title II defines a "public entity" as "any [s]tate or local government[s]" and their "department[s], agenc[ies], special purpose district[s], or other instrumentalit[ies]."  42 U.S.C. §§ 12131(1)(A), (B).  The FAC contains no facts suggesting that Central Coast Nephrology is a "public entity" under Title II.  While the FAC alleges that Mr. Delacruz's ERT services were paid for by his health insurance through the Affordable Care Act (*id.* ¶ 47), and elsewhere alleges that the facility provides services covered by Medicare (*see* Dkt. No. 34 ¶ 62), there is no indication that Mr. Delacruz's complaint has anything to do with the administration of those programs.  Moreover, allegations that Ms. Quirarte "as a registered nurse" is an agent of the U.S. Department of Health and Human Services via the Affordable Care Act and Covered California" are speculative, conclusory, and unsupported by any facts.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Indeed, in ruling on Ms. Quirarte's first motion to dismiss, the Court addressed Title II of the ADA solely because that is how the parties' briefed their respective arguments.  *See* Dkt. No. 29 at 7.  However, the Court specifically noted that the complaint did not identify whether Ms. Quirarte worked for a public entity or a private facility, and questioned whether Ms. Quirarte could be a proper defendant to a claim under Title II.  *See id.* at 7, 9.  The allegations of the FAC do not correct those deficiencies.  Nor is it apparent that the identified deficiencies could be cured by further amendment.  Accordingly, Mr. Delacruz's ADA claim is dismissed without leave to amend.

### B.    Section 504 of the Rehabilitation Act of 1973

Ms. Quirarte argues that Mr. Delacruz's Rehabilitation Act claim should be dismissed on the procedural ground that he was not given leave to assert it in his FAC.  Dkt. No. 38 at 6.  With respect to the merits of the claim, Ms. Quirarte argues that "the [Rehabilitation Act] claim should be dismissed for the same reasons the [ADA claim] should be dismissed.  The cause of action is not supported by the facts alleged."  *Id.* at 7.

Ms. Quirarte's motion regarding the merits of Mr. Delacruz's claim is denied, as her arguments are poorly developed and unpersuasive to the extent they ignore differences between the ADA and the Rehabilitation Act.  However, the Court otherwise grants her motion to dismiss, as she is correct that the Court did not give Mr. Delacruz leave to amend to include a

1  Rehabilitation Act claim.  *See* Fed. R. Civ. P. 15(a)(2) (for amendments other than as a matter of

2  course, "a party may amend its pleading only with the opposing party's written consent or the

3  court's leave.").  The Court's prior order of dismissal granted leave to amend "*only as to the

4  identified deficiencies in Mr. Delacruz's claim against Ms. Quirarte under the ADA*[.]"  Dkt. No.

5  29 at 11 (emphasis added).  While Mr. Delacruz argues that Title II of the ADA was modeled after

6  section 504 of the Rehabilitation Act, *see Weinreich*, 114 F.3d at 978, leave to amend cannot

7  plausibly be construed from that fact.  Mr. Delacruz also argues that the Court's prior order stated

8  that his amendments "must be warranted by existing law."  Dkt. No. 29 at 11.  However, that

9  portion of the order concerned Mr. Delacruz's Rule 11 obligations and in no way expanded the

10  scope of the Court's leave to amend.

11       Although Mr. Delacruz did not request leave to amend to add a Rehabilitation Act claim,

12  the Court liberally construes his opposition brief as such a request.  The Court concludes that Mr.

13  Delacruz has not provided sufficient grounds for such an amendment.  The Rehabilitation Act

14  prohibits discrimination in federally-funded programs and provides, in relevant part, that "[n]o

15  otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability,

16  be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

17  under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).  To

18  state a claim under section 504 of the Rehabilitation Act, a plaintiff must allege facts showing that

19  "(1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit;

20  (3) he was denied the benefits of the program solely by reason of his disability; and (4) the

21  program receives federal financial assistance."  *Weinreich*, 114 F.3d at 978 (cleaned up).  On the

22  facts alleged, it is not apparent whether such a claim properly may be maintained against Ms.

23  Quirarte individually, as the Rehabilitation Act, on its face, states that the Act applies to entities

24  that receive federal funding.  *See* 29 U.S.C. §§ 794(a), (b)(3)(A); *Zimmerman v. Oregon Dep't of

25  Justice*, 170 F.3d 1169, 1180 (9th Cir. 1999) (Rehabilitation Act applies "to private entities that

26  receive federal financial assistance.").  Moreover, the FAC alleges that Ms. Quirarte's conduct

27  was "motivated" by "falsehoods" about Mr. Delacruz's history of unsuccessful complaints as well

28  as his disability status, *see* Dkt. No. 34 ¶ 24, such that it appears Mr. Delacruz has not pled facts

United States District Court
Northern District of California

1    plausibly supporting the causation element of a Rehabilitation Act claim.

2          Accordingly, the Court dismisses Mr. Delacruz's Rehabilitation Act claim.  The Court is

3    skeptical whether Mr. Delacruz can plausibly state a claim for relief under that statute.  But as the

4    Court cannot conclude from the present record whether amendment would be futile, the Court will

5    give Mr. Delacruz leave to amend this claim—and only this claim—as explained below.

6          **C.     State Law Claims**

7          Where a federal court has original jurisdiction over a claim pursuant to federal law, it also

8    has supplemental jurisdiction over related state law claims.  28 U.S.C. § 1367(a).  A district court

9    "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it

10   has original jurisdiction."  28 U.S.C. § 1367(c)(3).  As all of Mr. Delacruz's federal claims are

11   being dismissed, the Court declines to exercise supplemental jurisdiction over any of the state law

12   claims asserted in the FAC, unless and until a viable federal Rehabilitation Act claim is adequately

13   pled.  Mr. Delacruz's state law claim against Ms. Quirarte is dismissed without prejudice, as

14   discussed below.

**IV.   CONCLUSION**

16         Based on the foregoing, Ms. Quirarte's motion to dismiss the FAC is granted as follows:

17         1. Mr. Delacruz's ADA claim is dismissed, without leave to amend.

18         2.  Mr. Delacruz's Rehabilitation Act claim is dismissed, with leave to amend.  The Court

19   emphasizes that Mr. Delacruz only has the Court's leave to amend the Rehabilitation Act claim.

20   He is not permitted to assert any new or additional claims for relief.  Additionally, Mr. Delacruz is

21   given leave to amend only to the extent he believes that he can truthfully assert a plausible

22   Rehabilitation Act claim, consistent with his obligations under Rule 11.

23         3.  Mr. Delacruz's state law claim against Ms. Quirarte is dismissed, without prejudice to

24   reassert the claim in an amended pleading, but only to the extent that Mr. Delacruz believes he can

25   adequately plead a federal claim for relief, consistent with the limited scope of leave to amend

26   permitted by this order.

27         If Mr. Delacruz chooses to amend his complaint, his amended pleading should be titled

28   "Second Amended Complaint."  He must file his Second Amended Complaint no later than **May**

United States District Court
Northern District of California

10

1    **23, 2024**.  Mr. Delacruz is advised that the failure to comply with court-ordered deadlines may

2    result in the dismissal of this case for his lack of attention to it and failure to prosecute this matter.

3    Fed. R. Civ. P. 41.

4            **IT IS SO ORDERED.**

5    Dated: May 9, 2024

6

7

8                                                Virginia K. DeMarchi
                                                 United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California